IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENDRICK BUTLER, # M-03292,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 13-cv-1270-JPG |
| | ) |
| **RICK HARRINGTON,** | ) |
| **KIMBERLY BUTLER, REDNOUR,** | ) |
| **GAETES, LT. VEATH,** | ) |
| **JASON HART, OFFICER ANTHONY,** | ) |
| **and SGT. HASEMAYER,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving an 80-year sentence for murder. The complaint was filed in this Court on December 10, 2013, but had been signed by Plaintiff on October 11, 2013, apparently before his transfer to Pontiac. Plaintiff's numerous claims arose while he was confined at Menard Correctional Center ("Menard"), and include allegations that he was subjected to excessive force, retaliated against for filing grievances against prison staff, denied equal access to educational programs and legal materials, and deprived of due process in the handling of prison disciplinary charges, among other claims.

In addition to the instant case, a second complaint submitted separately by Plaintiff was received on December 13, 2013, and filed as *Butler, Bell, and Brown v. Harrington, et al.*, Case No. 13-cv-1285-MJR. Much of the complaint in that case is an exact copy of the instant complaint, but Plaintiff included two different pages in his statement of claim, and listed two

additional Plaintiffs in the caption. That complaint is awaiting screening by the assigned Judge.

**The Complaint**

Plaintiff states that he was incarcerated at Menard since 2009 (Doc. 1, p. 4). Since that time, he was "denied equal protection rights" to participate in educational and rehabilitative programs. *Id*.

On an unspecified date, Plaintiff was "attacked" by several prison officials while he was being returned to Menard from a federal court writ. *Id*. He could not discern their identities, but he complained about the excessive use of force to Defendant Hasemayer (of Internal Affairs).

He claims that throughout his stay at Menard, the unidentified law library clerk has denied him access to legal materials and supplies, causing him to be late in filing documents (Doc. 1, pp. 4-5).

Plaintiff's housing area has been placed on "level 1 deadlock" for close to two years. During these excessive lockdown periods, he was denied medical, legal, and health privileges. He again invokes an equal protection claim, because other areas of the prison were not subjected to the same lockdown restrictions (Doc. 1, p. 5).

Plaintiff's legal and personal mail has been "mishandled" throughout his stay at Menard by unspecified persons. His legal mail was opened outside his presence, and some legal documents were lost, including a post-conviction petition, letters from attorneys, and outgoing legal material.

Plaintiff raises several claims that "wrongful" disciplinary reports have been lodged against him, and that he was improperly punished with segregation. In April 2011, he was given six months in segregation on three disciplinary infractions (Doc. 1, p. 5; Doc. 1-1, pp. 1-2). However, on July 22, 2011, two of the charges were deleted and Plaintiff's punishment was

reduced to only one month in segregation. He was released from segregation on July 29, 2011, and claims he served 60 days longer than he should have, after his punishment was adjusted. *Id*. Shortly after this release, Plaintiff was sent away on a federal court writ.

On September 11, 2013, Plaintiff was charged with fighting, dangerous disturbance, and dangerous contraband (Doc. 1, p. 5). He contested these charges but was found guilty. He claims that the evidence against him included statements from a confidential informant who saw Plaintiff with a weapon, but he was not allowed to confront that individual in his disciplinary hearing. Plaintiff indicates that he requested witnesses to be called to the hearing on his behalf, and that somebody (either Plaintiff, or his witnesses, or the confidential informant – the complaint is unclear on this point) was not called to that hearing (Doc. 1, p. 6). Plaintiff "was held until 3/11/2014" (Doc. 1, p. 5).

Next, Plaintiff complains that too much money was withdrawn from his inmate account to pay restitution that was ordered in a federal case (*United States v. Kendrick Butler*, No. 08-0072-4-MWB (N.D. Iowa), where Plaintiff was convicted of bank fraud), and that he was left without any funds to pay for hygiene items, legal material, or other necessities (Doc. 1, p. 7). He asserts that federal rules restrict such withdrawals to $30/month or quarterly. Further, he has not been given indigent hygiene supplies as often as he should receive them.

Plaintiff then returns to a discussion of a disciplinary hearing, apparently on the September 11, 2013, charges (Doc. 1, p. 7). He refers to an "altercation" during which he asked Officer Weaver (who is not a named Defendant) to notify Defendant Anthony (of Internal Affairs). Plaintiff came out of his cell and was "snatched" into another cell by Inmate Wells, who had a weapon. Somebody (either an inmate or a guard) then locked Plaintiff into the cell, where he was assaulted by Wells and attempted to fight him off. He did not receive medical


attention for his injuries.

Finally, on November 22, 2013, Plaintiff was placed on investigation status for another disciplinary report (Doc. 1, p. 9).  He claims this report was "written by the office of Internal Affairs" in retaliation for a grievance Plaintiff had filed against them.  *Id*.  They further retaliated by placing Plaintiff in handcuffs for three days straight, which cut off his circulation and bruised his wrists and ankles.  Prison staff also "assault[ed] his body" while he was handcuffed.  *Id*.  Plaintiff claims there was no proof that he was guilty of the disciplinary infractions, but he was punished with segregation nonetheless.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth*

*Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into twelve counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These counts are as follows:

> **Count 1:** Equal protection claim for denial of access to educational/rehabilitative programs;
>
> **Count 2:** Excessive force claim for assault by unidentified officers upon Plaintiff's return from a federal court writ;
>
> **Count 3:** Denial of access to legal materials by law library clerk which caused delay in filing court documents;
>
> **Count 4:** Equal protection claim and Eighth Amendment claim for denial of medical, legal, and health privileges during excessive lockdown periods;
>
> **Count 5:** Improper opening of legal mail and mishandling of personal mail;
>
> **Count 6:** Due process claim for April 11, 2011, disciplinary charges that resulted in Plaintiff serving 60 days excess segregation time before his punishment was reduced;
>
> **Count 7:** Due process and confrontation clause claims for September 11, 2013, disciplinary charges where Plaintiff was found guilty based on evidence from a confidential informant;
>
> **Count 8:** Claim for improper withdrawal of Plaintiff's funds to pay federal restitution;
>
> **Count 9:** Eighth Amendment claim for failure to provide Plaintiff with indigent hygiene supplies;
>
> **Count 10:** Failure to protect claim against unidentified officer(s) who allowed or facilitated Plaintiff's beating by a fellow inmate who pulled Plaintiff into his cell;
>
> **Count 11:** Retaliation claim against unidentified Internal Affairs staff who issued a false disciplinary report against Plaintiff on November 22, 2013, after Plaintiff pursued a grievance against them;
>
> **Count 12:** Excessive force and retaliation claims against unidentified officers who assaulted Plaintiff and kept him in handcuffs for three days in November 2013 following the November 22, 2013, disciplinary report.

Throughout his statement of claim, Plaintiff fails to state which (if any) of the named Defendants were personally responsible for the alleged constitutional violations. In order to state a claim against a Defendant, a plaintiff must describe what each named Defendant did (or failed to do), that violated the plaintiff's constitutional rights. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The complaint, as pled, thus fails to provide any Defendant with sufficient notice of the claims against him or her.

The Defendants include Menard Warden Harrington, former wardens Rednour and Gaetes, and assistant warden Kimberly Butler. The only mention Plaintiff makes of any of them in the complaint is to say that Defendant Gaetes was "aware of mail handling and other claims" (Doc. 1, p. 2). This statement does not indicate any personal involvement of Defendant Gaetes in the alleged wrongdoing. Liability will not attach to a warden merely because he was the supervisor of a prison official who committed an unconstitutional act, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

Likewise, Plaintiff "informed" Defendant Hasemayer of the excessive force incident (Count 2) and nothing was done (Doc. 1, pp. 2, 4). Plaintiff never states that Defendant Hasemayer took part in the attack on him. The recipient of a grievance or complaint does not incur liability, regardless of the outcome of the complaint. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Defendant Anthony was "in cahoots with officials and inmates where said confidential

informant gave him information that wasn't reliable that lead to an excessive seg period," and Defendants Veath and Hart were also "in cahoots" with him (Doc. 1, p. 2).  It is not clear whether this statement refers to the disciplinary action described in Count 6, Count 7, or Count 11.  These counts shall be discussed further below.

**Counts 2, 5, 10, 11, and 12**

Turning to the merits of Plaintiff's claims, his factual allegations for the following counts suggest that his constitutional rights may have been violated:

**Count 2:**  Excessive force claim for assault by unidentified officers upon Plaintiff's return from a federal court writ;

**Count 5:**  Improper opening of legal mail and mishandling of personal mail;

**Count 10:**  Failure to protect claim against unidentified officer(s) who allowed or facilitated Plaintiff's beating by a fellow inmate who pulled Plaintiff into his cell;

**Count 11:**  Retaliation claim against unidentified Internal Affairs staff who issued a false disciplinary report against Plaintiff on November 22, 2013, after Plaintiff pursued a grievance against them;

**Count 12:**  Excessive force and retaliation claims against unidentified officers who assaulted Plaintiff and kept him in handcuffs for three days in November 2013 following the November 22, 2013, disciplinary report.

However, the complaint as pled fails to state a constitutional claim upon which relief may be granted for these counts.  In order for these claims to receive further consideration, Plaintiff must identify the responsible Defendants for each count.  In addition, Plaintiff must provide additional information as to the dates of the incidents in Counts 2, 5, and 10, in order to enable the opposing parties to answer the complaint.

Plaintiff shall be required to submit an amended complaint (as instructed below), which shall include the factual allegations (and relevant dates) to support his claims in **Counts 2, 5, and 10,** and shall identify the responsible Defendants by name for each count.  If the amended

complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review pursuant to § 1915A.

As noted above, Plaintiff submitted a nearly identical complaint in Case No. 13-cv-1285-MJR.  That complaint differs from the instant one in that it identifies by name the officers who issued the retaliatory disciplinary report in **Count 11**, and names the three officers who kept Plaintiff in handcuffs as described in **Count 12** above.  Accordingly, **Counts 11 and 12** shall be dismissed from the instant case, without prejudice to these claims being considered in Case No. 13-cv-1285-MJR.

### Claims to be Dismissed

The claims in **Counts 1, 3, 4, 6, 7, 8, and 9** above are subject to dismissal pursuant to § 1915A, for the reasons explained below.

### Count 1 – Exclusion from Educational/Rehabilitative Programs

It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison, and institutions are not constitutionally required to provide these programs to inmates.  *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983).  Consequently, Plaintiff has no viable constitutional due process claim.

Similarly, Plaintiff's inability to take part in these programs does not give rise to an equal protection claim.  A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'"  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert.*

*denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)). Plaintiff's allegations do not suggest such purposeful discrimination, nor do they indicate that Plaintiff was singled out for differential treatment for no rational reason. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (discussing class-of-one equal protection claim). Accordingly, Count 1 shall be dismissed with prejudice.

**Count 3 – Denial of Access to Legal Materials**

Plaintiff alleges generally that due to the denial of access to legal material, case law, and "indigent legal packs," he was late in filing court documents. However, he does not specify what pending court cases were affected by this problem, nor does he claim that he suffered the dismissal of any claim or lost the opportunity to pursue a meritorious case as a result of the delay.

"[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.* Furthermore, even though Plaintiff may have filed some documents late, not every delay will rise to the level of a constitutional deprivation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid*, 969 F.2d at 603. In the instant complaint, Plaintiff does not make a single allegation which would describe any detriment to a specific case

or an actual or potential limitation on his access to the courts. This claim shall therefore be dismissed, albeit without prejudice.

**Count 4 – Excessive Lockdowns**

Plaintiff gives no specifics in his claim that he was denied "medical, legal, and health privileges" over a nearly two-year period when he subjected to institutional lockdowns. He does not describe what services or privileges were denied to him, how he might have been harmed, nor which Defendant(s) were responsible. Mere conclusory allegations such as these are not sufficient to state a constitutional claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Further, he fails to suggest that the lockdowns were imposed with the purpose of singling out Plaintiff, or some group to which he belongs, for disparate treatment. The complaint is insufficient to support either an Eighth Amendment claim or an equal protection claim. Count 4 shall therefore be dismissed without prejudice.

**Count 6 – Due Process/Excessive Segregation – April 2011 Disciplinary Charges**

Plaintiff asserts that he was made to serve 60 more days in segregation than he should have spent there, as a result of the April 11, 2011, disciplinary charges. His exhibits show that after he had already served three months in disciplinary segregation, two of the more serious charges were removed from his record and his punishment was reduced to one month in segregation (Doc. 1-1, pp. 1-2). This reduction in punishment, authorized by the Administrative Review Board ("ARB") of the Illinois Department of Corrections, apparently resulted from Plaintiff having appealed the action of the prison's adjustment committee. The notice of disciplinary reduction does not explain the reason for the ARB's action.

Under certain circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia*

*Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). However, those circumstances are not present in the instant case. First, Plaintiff does not describe any denial of procedural due process in the conduct of his disciplinary hearing over the April 2011 charges. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"). In fact, the July 2011 decision to delete two of Plaintiff's disciplinary infractions and to reduce his segregation time from six months to one month, indicates that Plaintiff received the due process he demanded, albeit not swiftly enough to prevent him from serving the extra 60 days.

Even if there had been a procedural flaw in the handling of the April 2011 disciplinary charges, Plaintiff cannot now claim he was deprived of a protected liberty interest. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the

duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was confined in segregation only 60 days longer than he should have been. In the context of Plaintiff's total sentence of 80 years, this amount of time does not trigger due process concerns. *See Marion*, 559 F.3d at 697-98 n.2 (70-day segregation period is "relatively short" in the context of a 12-year prison sentence, citing *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)). More to the point, Plaintiff raises no complaints regarding the conditions under which he was held in segregation. Accordingly, the claim in Count 6 shall be dismissed with prejudice.

**Count 7 - Due Process/Confrontation Clause - September 2013 Disciplinary Charges**

Plaintiff suggests that there could have been a denial of due process in that he may not have been allowed to call witness(es) in his defense during the disciplinary hearing over these charges (fighting, dangerous disturbance, and dangerous contraband). However, his complaint is not clear on this point (Doc. 1, pp. 5-6). Plaintiff also does not plainly state the duration of the segregation or any other punishments he may have received as a result of the disciplinary action.

Again, his statement of claim does not identify which prison officials conducted the hearing or imposed the punishment. For these reasons, he fails to state a claim upon which relief may be granted as to his due process claim, and this portion of Count 7 shall be dismissed without prejudice.

As for the confrontation clause claim regarding the confidential informant(s), prison disciplinary proceedings are not required to conform to the same rules that apply in the context of a criminal trial. Concerns for institutional security and the safety of individual inmates dictate the need for prison officials to protect the confidentiality of a prisoner who provides information used in a disciplinary proceeding against another inmate. Thus, a prison adjustment committee may consider statements obtained from a confidential informant without disclosing that individual's identity or allowing him to be questioned in the hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"); *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994) (in the context of a prison disciplinary hearing, prisoners "do not possess Sixth Amendment rights to confront and cross-examine witnesses"). Accordingly, Plaintiff has no viable claim for his inability to confront the confidential informant(s), and this portion of Count 7 shall be dismissed with prejudice.

**Count 8 – Restitution for Federal Conviction**

The taking of funds from Plaintiff's inmate trust account, regardless of the reason, will not give rise to a constitutional claim in federal court. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court to address the taking of a prisoner's property is an adequate, post-deprivation remedy; prisoner cannot maintain a federal

civil rights claim for deprivation of property).

In this case, it would appear that if Plaintiff is entitled to any relief for what he believes to be an improper withdrawal of his funds, he must seek it in the court where he was convicted and which ordered him to pay restitution. This Court will not interfere in the execution of that criminal judgment. The civil rights claim in Count 8 shall be dismissed with prejudice.

**Count 9 – Failure to Provide Hygiene Supplies**

Plaintiff alleges that for "weeks at a time" he has not received state-issued soap, toothbrushes, toothpaste, and shampoo. This brief statement does not suffice to state a viable constitutional claim.

No constitutional principle requires that inmates be permitted to own or receive hygiene items for the sake of owning cosmetics, but the deprivation of essential items may leave a prisoner exposed to the elements, or unable to care for his most fundamental needs, and thereby put his health in jeopardy and at that point, a constitutional right may be implicated. In *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), the Seventh Circuit considered an inmate's claim that he was denied toilet paper for five days and denied soap, a toothbrush and toothpaste for ten days, while "he was kept in a filthy, roach-infested cell." *Id.* at 1234. The Circuit noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Id.* at 1235-36. The Circuit then noted that "[a]lthough Harris experienced considerable unpleasantness, he suffered no physical harm," *id.* at 1235, and found that the conditions simply did not rise to the level of an Eighth Amendment violation.

The plaintiff in *Harris* spent ten days without his hygiene items. By contrast, Plaintiff's brief allegation as to the infrequency of receiving supplies does not state that he ever actually had

to do without hygiene items, and he gives the Court no reason to believe he endured conditions similar to those in *Harris* for even a full day.  Accordingly, Count 9 shall be dismissed without prejudice.

**Amendment of the Complaint**

In order to proceed on his claims in Counts 2, 5, and 10, Plaintiff must submit an amended complaint that includes all relevant factual allegations to support each claim, identifies which Defendants were involved in which of the claims, and indicates when the incidents in Counts 2, 5, and 10 occurred.  This pleading shall be designated as the First Amended Complaint.

Plaintiff is advised that an amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Plaintiff is further advised that the amended complaint will be subject to merits review under § 1915A.  Plaintiff shall also note that if any of the claims in Counts 2, 5, and 10 prove to be unrelated to one another and involve different Defendants, they may be subject to severance under *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

Because the claims in Counts 3, 4, and 9, as well as the due process portion of the claim in Count 7 shall be dismissed without prejudice, Plaintiff may attempt to correct the deficiencies in these claims either by re-pleading them in the First Amended Complaint, or by bringing the claims in separate action(s). However, any unrelated claims shall be severed, and additional filing fees shall be assessed.

The claims in Counts 1, 6, and 8, and the confrontation clause portion of the claim in Count 7, shall be dismissed with prejudice. If Plaintiff attempts to revive these claims in his First Amended Complaint, it shall be stricken and this action may be subject to dismissal for failure to comply with an order of this Court. *See* FED. R. CIV. P. 41(b).

**Pending Motion**

Plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) shall be addressed in a separate order. Plaintiff must timely comply with the order at Doc. 4 to provide the required inmate trust fund account statement(s).

**Disposition**

**COUNTS 3, 4, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 1, 6, and 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 7** is also **DISMISSED;** the due process portion is dismissed without prejudice, but the confrontation clause portion is dismissed with prejudice. **COUNTS 11 and 12** are **DISMISSED FROM THIS ACTION** without prejudice to those claims being considered in Plaintiff's other pending case in this Court, *Butler, Bell, and Brown v. Harrington, et al.*, Case No. 13-cv-1285-MJR (filed Dec. 13, 2013).

**IT IS FURTHER ORDERED** that, should he wish to proceed with the claims in **COUNTS 2, 5, and/or 10**, Plaintiff shall file his First Amended Complaint, in accordance with

the instructions above, within 35 days of the entry of this order (on or before **February 13, 2014**).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 9, 2014**

                                        *s/J. Phil Gilbert*
                                        United States District Judge