IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENDRICK BUTLER, # M-03292,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-1270-JPG |
| ) | |
| **RICK HARRINGTON,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court for a threshold review of Plaintiff's Second Amended Complaint (Doc. 17), filed March 20, 2014, at the direction of the Court (*See* Doc. 16). Plaintiff's civil rights claims arose while he was incarcerated at Menard Correctional Center ("Menard"). However, the action was filed soon after he was transferred to Pontiac Correctional Center ("Pontiac"), where he is now confined and is serving an 80-year sentence for murder.

**Pending Motions**

Also before the Court are three pending motions filed by Plaintiff (Docs. 14, 18, and 22).

The motion for recruitment of counsel (Doc. 14) shall be referred to a United States Magistrate Judge for disposition.

Plaintiff filed the motion to add documents and exhibits (Doc. 18) not long after he filed the Second Amended Complaint. The motion includes three pages of documents which relate to Count 3 herein (Doc. 18, pp. 2-4). This motion (Doc. 18) is **GRANTED**. The Clerk is **DIRECTED** to re-file pages 2-4 of Doc. 18 as exhibits to the Second Amended Complaint (Doc. 17).

Document 22 is a motion for status update, filed April 28, 2014. This motion (Doc. 22) is **GRANTED** in that the status of this case is reflected herein.

**Background**

The original complaint (Doc. 1) included claims that the Court designated as 12 distinct counts. Upon initial review (Doc. 5), the Court determined that the allegations in Counts 2, 5, and 10 suggested that Plaintiff's constitutional rights had been violated, and he was directed to file an amended complaint to identify the responsible Defendants and flesh out his allegations. Counts 3, 4, a portion of Count 7, and Count 9 were dismissed without prejudice. Counts 1, 6, another portion of Count 7, and Count 8 were dismissed with prejudice. Finally, Counts 11 and 12 were dismissed without prejudice so that Plaintiff could pursue them in another case he filed shortly after bringing the instant action, *Butler v. Anthony*, Case No. 13-cv-1285-MJR-SCW.

Plaintiff filed a First Amended Complaint (Doc. 8) which was stricken from the record for failure to comply with the Order directing Plaintiff to amend the original complaint (Doc. 16). Plaintiff was again ordered to file an amended complaint in compliance with the Court's instructions. *Id*.

**The Second Amended Complaint (Doc. 17)**

Plaintiff's new amended complaint contains allegations relating to Counts 2, 3, 4, 5, 7, 9, and 10. He lists 33 Defendants (Doc. 17, pp. 1-5),[1] and attaches 26 pages of exhibits (Doc. 17-1).[2] For each count, Plaintiff's allegations shall be summarized below. Following the summary,

---

[1] When the amended complaint was scanned for transmittal to the Court, parts of the top lines on pages 3, 4, and 5, were cut off. However, the Court shall not require Plaintiff to re-send the document, because the allegations in the body of the complaint reveal which Defendants are named in connection with each count.

[2] A number of the attached exhibits do not relate to any of the claims in the amended petition, for example, those that reflect a November 26, 2013, disciplinary charge arising from a letter authored by a Vice Lords minister of command threatening violence against a correctional officer. Plaintiff was

the Court shall evaluate each claim in light of the requirements of 28 U.S.C. § 1915A. Section 1915A directs the Court to conduct a prompt threshold review of a complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

**Count 2 – Excessive Force**

In December 2010 or January 2011, Plaintiff had been in the Marion County Jail on a federal court writ (Doc. 17, pp. 8-9). He was attacked there by Marion County Officer Defendant Carter. Right after this attack, Plaintiff was transferred back to Menard. Upon his arrival at Menard, Plaintiff was taken to a room in the North 2 segregation area, where he was assaulted by approximately eight officers in tactical uniforms including helmets and face shields (Doc. 17, p. 8). Only later was Plaintiff able to identify some of his assailants as Defendants Mezzo, Smith, Livingston, Federette/Federick,[3] and Krause.

Soon after the attack, a nurse saw bruises on Plaintiff's face, and notified Internal Affairs. Defendants Sgt. Hasemayer and Gaetez (the former Menard Warden, also spelled Gaetes) were notified of the incident but did nothing. Plaintiff was placed on investigation status in segregation for 30 days by either Defendant Gaetez or Patchison (also a former Menard Warden), where he was not provided with soap, toothpaste, or towels. He was not given any further medical treatment for his injured back and tailbone until a month after the incident. After he was returned to general population and was able to identify some of his attackers, he filed grievances with Defendants Summers, Allsap, and Pain/Robinson[4] (all counselors).

Plaintiff's allegations in Count 2 that he was attacked and assaulted by Defendants

---

charged with having written that letter, but raises no claims herein regarding that matter (Doc. 17-1, pp. 6-7, 10-11, 19-20, 22-24).
[3] Plaintiff gives two alternative possible spellings for this Defendant's surname.
[4] Plaintiff states that this Defendant's name is either Pain or Robinson.

Carter, Mezzo, Smith, Livingston, Federette/Federick, and Krause, state an actionable Eighth Amendment claim against these officers for the excessive use of force. Plaintiff may proceed on this claim against these six Defendants.

However, Plaintiff fails to establish that Defendants Hasemeyer, Gaetez/Gaetes, Patchison, Summers, Allsap, or Pain/Robinson violated his constitutional rights. None of these individuals took part in the attacks on Plaintiff. Instead, they only became aware of the incident after the fact, when they were asked to investigate or to address Plaintiff's grievances or complaints. A defendant's failure to investigate or to satisfactorily resolve a grievance does not violate the Constitution. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Similarly, the then-wardens cannot be held liable merely because they held supervisory authority over the officers who attacked Plaintiff, or because they failed to take action against the guards once they were made aware of the incident. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Therefore, Defendants Hasemeyer, Gaetez, Patchison, Summers, Allsap, and Pain/Robinson shall be dismissed from Count 2.

Finally, Plaintiff's allegations that he was denied some hygiene supplies while in investigative segregation, and that his medical treatment was delayed, state no claim. He fails to connect any Defendant with these alleged deprivations, nor does the complaint suggest that any person was aware of a serious risk to his health yet failed to act to mitigate the risk. The hygiene supply/medical deliberate indifference allegations in connection with Count 2 are therefore dismissed with prejudice.

To summarize, **Count 2** shall proceed only against **Defendants Carter, Mezzo, Smith, Livingston, Federette/Federick, and Krause**, for excessive force.

**Count 3 – Access to Legal Materials/Access to Courts**

Plaintiff had a pending appeal of a federal criminal case in the Northern District of Iowa (Case No. 08-0072-4-MWB) in March of 2012 (Doc. 17, p. 9; Doc. 17-1, pp. 17-18).[5] He was challenging his sentence, which included an order for the payment of restitution that he sought to challenge. He did not have a lawyer representing him. Defendant Brammlet (Law Library Clerk) would not allow Plaintiff sufficient time in the library to conduct research, and Plaintiff did not have the funds to pay for copies of material that he could review outside the library. He alleges that Defendant Brammlet's denial of access to the library and legal materials caused him to miss his deadline to pursue the appeal.

At this stage, these allegations are sufficient to state a claim against Defendant Brammlet for denial of access to the courts. However, because this claim is factually and legally unrelated to the remaining claims in this action, and involves a Defendant who is not named in any other count, the Court shall sever it into a separate case. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). Plaintiff shall be given an opportunity to voluntarily dismiss this claim if he does not wish to incur an additional filing fee.

**Count 4 – Disposal of Legal Material and Denial of Medical Care During Lockdown**

After Plaintiff returned to Menard from a Cook County court writ, the prison was on lockdown during May, June, and July of 2011 (Doc. 17, p. 9). Defendant Gwaltney and other officers searched his cell and disposed of some of Plaintiff's legal material. Nobody conducted any review of the locked-down inmates' court deadlines, so Plaintiff was unable to obtain a form to file a notice of appeal (apparently for the federal criminal case referenced in Count 3).

---

[5] The documents included with Plaintiff's motion to add documents and exhibits (Doc. 18), granted herein, relate to this claim.

During this lockdown, Plaintiff was moved to a new cell in a rush, and left behind his blood pressure medication and asthma inhaler. Plaintiff asked Defendant Dunn to help him get these items returned or replaced, but was denied. He needed the inhaler to stop asthma attacks, and was forced to borrow an inhaler from a neighboring inmate. Defendants Stewart, Davies, Philips, and Dunn all either denied Plaintiff's requests for medical assistance, or falsely stated that Plaintiff refused a healthcare pass (Doc. 17, p. 10). Defendants Woloff, Casper, and Livingston denied Plaintiff's requests to get medical treatment for his back, and Defendant Arnold also refused to allow him to get medical attention for an unspecified problem.

The allegations against Defendant Gwaltney for taking Plaintiff's legal material do not add up to a constitutional violation. Plaintiff does not claim that this action, which took place in approximately May 2011, caused him to be unable to pursue the appeal described in Count 3 – which was allegedly lost as a result of completely different events in early 2012. Further, a deprivation of property without due process, while implicating the Fourteenth Amendment, must be pursued in the Illinois Court of Claims, rather than in federal court. Where the state provides an adequate remedy for such a deprivation, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). For these reasons, the civil rights claim against Defendant Gwaltney in Count 4 shall be dismissed.

On the other hand, Plaintiff states a colorable claim for deliberate indifference to his serious medical need for asthma and blood pressure medications, and/or for medical attention for

his back, against **Defendants Dunn, Stewart, Davies, Philips, Woloff, Casper, and Livingston**.  He may proceed on these claims in **Count 4**.  However, the claim against Defendant Arnold is dismissed, because Plaintiff failed to specify the nature of his medical problem; the Court will not speculate as to whether it rose to the level of an objectively serious medical need.

**Count 5 – Interference with Legal and Personal Mail; Destruction of Personal Property and Legal Material**

Plaintiff describes one incident on March 21, 2013, where an envelope from Cook County Circuit Clerk Dorothy Brown, stamped "legal mail," was wrongfully opened and documents were missing when the material got to him.  The missing papers pertained to his petition for post-conviction relief and affidavits (Doc. 17, p. 10; Doc. 17-1, pp. 14-15).  The only incident Plaintiff mentions regarding interference with his personal mail was on July 11, 2012.  An envelope or package mailed to him by a family member or friend was returned to the sender by the mailroom staff because it contained some prohibited item (Doc. 17-1, p. 16).  Plaintiff was notified that this mail was returned, but was never told exactly what the prohibited item was.  He filed grievances over these incidents.

Plaintiff further alleges that on September 11, 2013, when he was brought to segregation, Defendants Krause, Casper, Anthony, and Weaver searched his personal property and destroyed copies of legal petitions, as well as poems, raps, and photographs (Doc. 17, p. 10).  He asserts that these actions were taken in retaliation for grievances Plaintiff had previously filed,[6] and in part because of Defendant Anthony's connection with gangs.

The mail interference allegations fail to state a claim upon which relief may be granted.

---

[6] One of Plaintiff's exhibits reflects that a disciplinary charge filed against him by Defendant Krause on September 3, 2013, was expunged on September 10, 2013, after Plaintiff's cellmate pled guilty to the offense (Doc. 17-1, pp. 8-9).  It is not clear whether Plaintiff filed a grievance with reference to this charge.

Again, Plaintiff fails to identify any responsible Defendant. But even if he had done so, the single incident of opening "legal" correspondence from a court did not violate the Constitution. Mail from a court clerk is not privileged correspondence, and may be opened outside the presence of the inmate. *See Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (correspondence from a court to a litigant is a public document); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). True legal mail consists of correspondence between an inmate and an attorney, which is given heightened protection because of First Amendment concerns and the potential for interference with access to the courts. *See Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).

Plaintiff does not have a right to receive material through the mail that is prohibited by institutional rules. It has long been established that prison staff may open and search incoming non-legal mail for contraband. *Kaufman*, 419 F.3d at 685. Plaintiff's complaint over the return of his personal mail/package thus states no claim.

However, the allegation that Defendants Krause, Casper, Anthony, and Weaver destroyed Plaintiff's personal property and legal material on September 11, 2013, in retaliation for his having pursued grievances,[7] merits further review. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement, all of which is protected speech under the First Amendment. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). As noted in Count 4, however, Plaintiff cannot maintain a separate

---

[7] However, Defendant Anthony's purported gang association cannot form the basis for a retaliation claim. If Plaintiff were a target because of his own gang affiliation, this would not be constitutionally protected activity on his part. *Westefer v. Snyder*, 422 F.3d 570, 574-75 (7th Cir. 2005) (prison gangs are "a manifest threat to prison order" and prisoners do not have a First Amendment right to belong to a gang).

civil rights claim for the deprivation of his property. That matter must be pursued, if at all, in the Court of Claims.

Accordingly, Plaintiff may pursue his retaliation claim against **Defendants Krause, Casper, Anthony, and Weaver** in **Count 5**. However, the mail interference portions of Count 5 shall be dismissed with prejudice.

### Count 7 – Due Process in Prison Disciplinary Hearing

On September 11, 2013, Plaintiff was snatched into another inmate's cell and assaulted. Plaintiff was charged by Defendants Weaver and Anthony with fighting and having dangerous contraband (a weapon) in connection with this incident. Defendant Counselor Nippe[8] was "made aware of" this report. Plaintiff requested that his cellmate be called as a witness to testify to the disciplinary committee on his behalf, but Defendants Veath and Hart did not call Plaintiff's witness, and found him guilty. Plaintiff does not disclose what punishment he received as a result of this proceeding.

The failure to call Plaintiff's witness may have run afoul of the due process requirements outlined in *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974), which include the right to call witnesses in a prison disciplinary hearing if prison safety allows. However, as Plaintiff was advised in this Court's merits review order on the original complaint (Doc. 5, pp. 12-13), he must include information on the punishment he received, including the duration of any segregation term, in order for the Court to evaluate whether he might have a constitutional claim for the denial of due process. Further, the Court explained in dismissing Count 6 with prejudice that:

> An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to

---

[8] This Defendant is listed on the Court's docket sheet as "Counselor Nipper."

> litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.
>
> The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

(Doc. 5, pp. 11-12). In the dismissed Count 6, Plaintiff had served 60 unwarranted days in segregation before his April 2011 disciplinary charges were expunged. Count 6 was dismissed in part because of the short duration of his time in segregation and the lack of any claim that he was subjected to unusually onerous segregation conditions. *See also Hardaway v. Meyerhoff*, 734 F.3d 740 (7th Cir. 2013) (discussing *Marion*).

Plaintiff has now had two chances to amend his complaint with regards to the due process claim in Count 7. Although he has now identified the Defendants involved, he has failed to include sufficient facts to state a claim for deprivation of a liberty interest without due process. Absent any indication that the allegedly flawed disciplinary hearing resulted in any punishment at all, let alone a term of disciplinary segregation of sufficient length and under conditions that could trigger further inquiry under *Marion*, 559 F.3d at 697-98, this claim does not survive § 1915A review. For these reasons, **Count 7** against **Defendants Weaver, Anthony, Nippe/Nipper, Veath, and Hart** shall be dismissed again, but this time the dismissal shall be

with prejudice.

**<u>Count 9 – Denial of Hygiene Supplies</u>**

Plaintiff went for "months" without being given toothpaste or soap (Doc. 17, pp. 11-12). Because he was indigent, he depended on the prison to provide him with basic hygiene items, which normally are given out once per month. Defendant Dunn was responsible for providing these supplies, but failed to do so. Plaintiff states that this occurred during the time he was being denied medical treatment as described in Count 4 (approximately May-July 2011). As a result, he suffered painful dental problems and eventually had to have a wisdom tooth pulled. He now suffers from "non-feeling" in his chin. Further, he was bitten by "some form of critter" but never received any medical treatment.

The allegation that Defendant Dunn failed to provide Plaintiff with hygiene supplies states an Eighth Amendment claim against this Defendant that merits further review in **Count 9**. The failure to provide treatment for the critter bite may be reviewed as part of the claim for denial of medical care in **Count 4** above.

**<u>Count 10 – Failure to Protect from Inmate Assault</u>**

This claim again relates to the incident on September 11, 2013, which has been mentioned above. Plaintiff states that he received a threat from fellow inmate Wells at about 2:00 p.m. that day (Doc. 17, p. 12). At 3:00 p.m., Plaintiff asked Defendant Weaver to call Defendant Casper (his supervisor) and the Intelligence Unit to inform them of the threat to his safety. The reason for the threat was that "it was believed" that Plaintiff and Wells belonged to the same gang, and Wells had just "jumped on" his cellmate. *Id.* Defendant Weaver indicated he did not believe Plaintiff, but said he would contact Defendant Casper and Internal Affairs (Plaintiff believes this would have been Defendant Anthony). Neither Defendant Casper or

Defendant Anthony took any action.

When the time came for inmates to go to the chow hall (around 4:30-5:00 p.m. the same day), Defendant Weaver told Plaintiff he would not bring him a dinner tray if Plaintiff stayed in his cell.  Not wanting to miss his meal, Plaintiff left for the chow hall.  As he walked past Wells' cell, he was attacked and "snatched" into the cell.  Somebody, perhaps a correctional officer, locked the cell door.  Plaintiff tried to fight off Wells, until Wells knocked him out with a blow from an adaptor inside a sock.  Wells continued to beat Plaintiff for five minutes or more until they were sprayed with pepper spray.

Plaintiff was taken to the medical unit for treatment for the pepper spray, but no other treatment was given for the injuries sustained in the beating.  Defendant Anthony, after learning that Wells is a Gangsta Disciple and Plaintiff is an ex-Vice Lord, wrote Plaintiff up for possessing the weapon so that his "believed gang associate" would not be charged with an offense.[9]

Based on these facts, Plaintiff has stated an Eighth Amendment claim against Defendant Weaver for failure to protect him from Wells' attack, after Plaintiff relayed a specific and imminent threat.  *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).  It is not clear from the facts whether Defendant Casper or Defendant Anthony had been informed of the threat before the attack occurred.  In order to maintain a claim against these Defendants, Plaintiff must ultimately show that they knew of a substantial risk that Wells would attack Plaintiff, yet failed to take any action.  *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001).  At this stage, however, dismissal of these Defendants under § 1915A is not warranted.  Plaintiff shall be

---

[9] It appears that this disciplinary charge is the same one discussed above in Count 7.  Again, Plaintiff gives no further information regarding any punishment he received as a result of that charge.

allowed to proceed on **Count 10** against **Defendants Weaver, Casper and Anthony**.

**Dismissal of Other Claims and Defendants**

In the final paragraph of the amended complaint, Plaintiff alleges that "overall – all mentioned wardens were notified" of the lack of medical attention, the attacks, and ongoing threats (Doc. 17, p. 13). A mere notification that other prison officials may have violated Plaintiff's constitutional rights is not sufficient to impose liability on the warden. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of *respondeat superior* is not applicable to § 1983 actions; prison official must have been personally involved in unconstitutional conduct for liability to attach). This allegation fails to state any claim against Defendants Harrington, Rednour, Patchison or Gaetes/Gaetez, all current or former wardens.

Finally, the law library clerk (presumably Defendant Brammlet) "refused to file civil suit so that the Plaintiff can continue further action" (Doc. 17, p. 13). Obviously, Plaintiff succeeded in filing the instant case (as well as another action), therefore he does not appear to have been denied access to the courts as a result of the alleged refusal to file a suit. This section states no further claim against Defendant Brammlet or any other library clerk.

The Court was unable to find any factual allegations involving Defendants Harrington, Butler, Rednour, Brown, Hecht, Best, or Hudson in the body of the amended complaint. These parties are mentioned only in Plaintiff's list of Defendants on pages 1-5. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore,

merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Plaintiff was *twice* instructed that in preparing his amended complaint, he must identify which Defendants were responsible for the conduct in each of his claims (Doc 5, p. 15; Doc. 16, p. 8).  However, he again included these seven Defendants without any description of what, if anything, they did to violate his constitutional rights.  Accordingly, **Defendants Harrington, Butler, Rednour, Brown, Hecht, Best, and Hudson** shall be dismissed from this action without prejudice.

**Disposition**

The motions at Doc. 18 and Doc. 22 are **GRANTED.**

**COUNT 2** for excessive force shall proceed against **DEFENDANTS CARTER, MEZZO, SMITH, LIVINGSTON, FEDERETTE/FEDERICK,** and **KRAUSE.**

**COUNT 3** for denial of access to the courts shall proceed against **DEFENDANT BRAMMLET,** but shall be severed into a new action as specified below.

**COUNT 4** for deliberate indifference to medical needs shall proceed against **DEFENDANTS DUNN, STEWART, DAVIES, PHILIPS, WOLOFF, CASPER,** and **LIVINGSTON.**  The civil rights claim against **DEFENDANT GWALTNEY** in **COUNT 4** for destruction of legal material is **DISMISSED** with prejudice; however, it may be pursued in the Illinois Court of Claims.

The retaliation claim in **COUNT 5** shall proceed against **DEFENDANTS KRAUSE, CASPER, ANTHONY,** and  **WEAVER.**  The mail interference portions of **COUNT 5** are **DISMISSED** with prejudice.

**COUNT 7** is **DISMISSED with prejudice** in its entirety for failure to state a claim upon

which relief may be granted (previously, the due process portion of this claim had been dismissed without prejudice).

**COUNT 9** for denial of hygiene supplies shall proceed against **DEFENDANT DUNN.**

**COUNT 10** for failure to protect Plaintiff from assault shall proceed against **DEFENDANTS WEAVER, CASPER,** and **ANTHONY.**

**DEFENDANTS HARRINGTON, BUTLER, REDNOUR, GAETES/GAETEZ, HASEMAYER, BROWN, HECHT, ARNOLD, PATCHISON, BEST,** and **HUDSON** are **DISMISSED** from this action without prejudice.

**DEFENDANTS VEATH, HART, NIPPE/NIPPER, ALLSAP, SUMMERS, PAIN/ROBINSON,** and **GWALTNEY** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's access to court claim in **COUNT 3**, which is unrelated to the remaining claims, is **SEVERED** into a new case. That new case shall be: Claim against **DEFENDANT BRAMMLET** for denial of access to legal material, which caused Plaintiff to be unable to pursue an appeal of his federal criminal case.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;
(2) The Second Amended Complaint (Doc. 17) including exhibits to be added from Doc. 18;
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) and Trust Fund Statement (Doc. 11).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before **June 13, 2014**). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. Service shall not be

ordered on Defendant Brammlet until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that Defendant **BRAMMLET** is **TERMINATED** from *this* action with prejudice.

As to **COUNTS 2, 4, 5, 9, and 10**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **ANTHONY, FEDERETTE/FEDERICK, CARTER, KRAUSE, MEZZO, CASPER, WOLOFF, SMITH, DUNN, STEWART, DAVIES, PHILLIPS, WEAVER,** and **LIVINGSTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 14).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: May 9, 2014**

    <u>s/ J. Phil Gilbert</u>
    United States District Judge